IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STANLEY RAY WINSTON, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PX-19-2463 |
| MARYLAND DIVISION OF CORRECTIONS *et al.*, | * | |
| Respondents. | * | |
| | *** | |

**<u>MEMORANDUM OPINION</u>**

Stanley Ray Winston brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging the validity state court criminal conviction for murder and related offenses.  ECF No. 1 at 4-5.  The Petition is ready for resolution and no hearing is necessary.  *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000).  For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

**I.   Background**

In February 2016, Winston, Brian Mayhew, and Anthony Cannon were tried together in the Circuit Court for Prince George's County in connection with the murder of Nicoh Mayhew.[1]  The three were accused of killing Nicoh to prevent him from testifying against Brian who was facing other murder charges at the time.  ECF No. 4-6 at 51-57; ECF No. 4-8 at 84-85, 88-89, 91.

---

[1] This was the second criminal trial because the first ended in a hung jury.  ECF No. 4-1 at 120.

The trial evidence for Nicoh's murder revealed that the three conspirators plotted the killing while Brian was detained at Prince George's County Detention Center. ECF No. 4-8 at 122-23. On November 27, 2012, Nicoh had been visiting another detainee. *Id*. at 120-121; 127. Brian Mayhew was in the visitor area at the same time as Nicoh, and received permission from the guard to speak with him. *Id*. at. 122-23. The men talked for less than a minute. *Id*. at 123.

After that visit, Nicoh's demeanor changed. According to his girlfriend, he became very "[w]orried that somebody was, like, going to do something to him." ECF No. 4-6 at 125. Nicoh's mother also confirmed that Nicoh was scared and did not want to leave his two-year old son. ECF No. 4-6 at 83. Law enforcement also had difficulty locating Nicoh. ECF No. 4-8 at 92.

About a week later, Brian placed a phone call, recorded by the detention center, to Winston and Cannon. He told the men that the "incident" should happen outside an apartment that matched the description of where Nicoh's mother lived. ECF No. 4-1 at 117. Brian also told the men to "[c]hill until you see something and then we snap it up." *Id*. On another recorded jail call, Brian advised Winston and Cannon that Nicoh would arrive with his son the apartment between 9 and 11 a.m. *Id*.

Three days before the murder, Brian called Nicoh to tell him, "Nicoh, I love you." Six minutes later, Brian called Winston. ECF No. 4-1 at 117. A day before the murder, Brian again called Winston and directed that Winston join Cannon on the call. The three proceeded to discuss that the next day was "showtime." Brian also told the men that Nicoh's mother drove gold Hyundai with body damage on the front of the car. ECF No. 4-1 at 116. He

2

separately told Cannon to wait near the gold car in front of the apartment and that Nicoh would arrive driving a white Kia. *Id.* at 117.[2]

On the morning of the murder, a maintenance worker saw two "tall," "slender" "black" men wearing "gray, black jackets or hoods" in the parking lot near the apartment. ECF No. 4-9 at 49. He next saw a man with the baby walk toward the building as two men "started running out with a gun in hand." *Id*. at 49. The worker also heard gunshots and someone yell. *Id*. at 50. At the same time, Nicoh's mother woke to the sound of gunshots and a baby crying. ECF No. 4-6 at 87. Outside, she found Nicoh dead and her two-year-old grandson sitting in a pool of blood. *Id*. at 88.

Contemporaneous video surveillance footage showed one of the hooded men inspecting the gold Hyundai, and then Nicoh driving up in a white Kia.[3] ECF No. 4-1 at 116. Geolocation data confirmed that two cell phones associated with Winston and Cannon had been in the vicinity of the murder that morning. ECF No. 4-11 at 50-54. Afterwards, Cannon and Winston shared via text message a Washington Post article about the murder. ECF No. 4-10 at 27. Three men also discussed that Nicoh's baby "didn't get in the way." ECF No. 4-1 at 117-18.

All three defendants were convicted at trial. Winston received a sentence of life imprisonment plus a consecutive 105 years, with 10 years to be served without the possibility of parole. ECF No. 4-13 at 27-28.

---

[2] In an effort to conceal these calls, Brian placed them using another detainee's identification number. ECF No. 4-11 at 136. He also called his girlfriend who would connect him, via a third-party call, to Cannon, Winston, and others, thus preventing law enforcement from learning the telephone numbers of the people to whom he was speaking. ECF No. 4-1 at 116. Winston instructed Brian's girlfriend on how to set up the third-party calls. *Id.* at 116-17.

[3] The video footage has not been provided to the Court, so the Court relies on the trial transcript and appellate decision to describe its contents.

On direct appeal, Winston challenged the authenticity of the recorded jail calls and whether the discussions were properly admitted under the coconspirator exception to the hearsay rule. ECF No. 4-1 at 122. The Maryland Court of Special Appeals affirmed the convictions and sentence. ECF No. 4-1 at 132-36; 146; 153. Winston next filed an application for certiorari to the Maryland Court of Appeals. In it, he argued that the trial court erred in admitting "unreliable and warrantless" geo-location data and that the evidence at trial was insufficient to convict him. ECF No. 4-1 at 155. The Court of Appeals rejected the application as untimely filed. ECF No. 1-3 at 2.

Winston thereafter filed his Petition in this Court. Here, he argues that the Maryland Court of Appeals improperly dismissed the certiorari application as untimely. He also challenges the admissibility of the geo-location data and the sufficiency of the evidence supporting the conviction. ECF No. 1 at 4-5. Respondents contend that the claims are not proper for resolution in a federal habeas petition and are procedurally defaulted. As explained in more detail below, the Court agrees with Respondents.

## II.     Standard of Review

A Petition for a writ of habeas corpus is designed to reach violations of the United States Constitution or federal law. 28 U.S.C. § 2254(a) (2018). Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 562 U.S. 1, 1 (2010); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009). This Court must give "considerable deference to the state court decision," and may not grant habeas relief unless the state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.'" *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C. § 2254(d)). This Court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Id*.

A state court's decision is contrary to established federal law if the court arrived at a legal conclusion at odds with a decision of the United States Supreme Court, or confronted facts that are "materially indistinguishable from relevant Supreme Court" precedent but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). As to an unreasonable determination, a federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes*, 751 F.3d at 238 (quoting *White v. Woodall*, 572 U.S. 415, 419-20 (2014)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal marks and citations omitted).

Prior to filing a federal habeas petition, the petitioner must pursue a claim at every stage of the state court proceedings, through to the highest state court with jurisdiction to hear it. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Failure to do so renders the claim procedurally defaulted. *Id.* (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-

91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim in post-conviction petition); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A claim may also be procedural defaulted if a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999). As the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998), citing *Coleman*, 501 U.S. at 731-32. Under Maryland law, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . in a prior [post-conviction] petition." Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i). A rebuttable presumption exists that this waiver is knowing and intelligent. *Id.* at § 7-106(b)(2).

Importantly, procedural default may be excused if a petitioner can demonstrate (1) both "cause" for the procedural default and that he will suffer "prejudice" if the claims are not considered on their merits; or (2) that failure to consider the defaulted claim(s) would result in a miscarriage of justice, that is, the conviction of someone who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). "Prejudice" exists if a petitioner can show not merely that the alleged errors "constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the] entire [proceeding] with error of constitutional dimensions." *United*

*States v. Frady*, 456 U.S. 152, 170 (1982). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims so as to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314–15 (1995).

With these standards in mind, the Court turns to the claims.

### III. Analysis

#### A. Claim 1: Dismissal of State Certiorari Petition as Untimely

The first claim in the Petition challenges the Maryland Court of Appeals dismissal of Winston's certiorari petition on timeliness grounds. He argues that this decision violates his right to due process. The Petition more particularly finds fault with the Court of Appeals' failure to apply the prison mailbox rule articulated in *Houston v. Lack*, 487 U.S. 266 (1988).

Fundamentally, this claim fails because the mailbox rule announced in *Houston* "was not constitutional or equitable in nature; rather it was based on an interpretation of the word "filed" in the [federal] rule and statute [28 U.S.C. § 2107] governing the timeliness of notices of appeal." *Jenkins v. Burtzloff*, 69 F. 3d 460, 461 (10th Cir. 1995). Moreover, that rule reaches the timing of federal, not state filings. State filing deadlines remain a matter exclusively of state court rulemaking, and do not implicate a federal statute or constitutional principle. *Vroman v. Brigano*, 346 F. 3d 598, 603-04 (6th Cir. 2003) (declining to apply the federal mailbox rule to state post-conviction filing where state did not adopt rule); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (declining to extend *Houston v. Lack* to filing of state post-conviction application); *Adams v. LeMaster,* 223 F. 3d 1177, 1181-82 (10th Cir. 2000) (deferring to state court's application of state filing laws); *Webster v. Moore,* 199 F. 3d 1256, 1258-59 (11th Cir. 2000). Thus, because Winston has failed to raise a violation of a federal constitutional or statutory right, the claim cannot proceed. 28 U.S.C. § 2254(a)*; see also*

*Wilson,* 562 U.S. at 5; *Spencer v. Murray,* 18 F.3d 237, 239-40 (4th Cir. 1994). The claim is denied and dismissed.

### B. Claims 2 & 3: Geolocation Data and Sufficiency of the Evidence

In the remaining two claims, Winston challenges the trial court's admission of geo-location evidence as violating his due process rights. ECF No. 1 at 4. He also argues that the evidence failed to prove that either he or his conspirators acted as the "the triggerman who shot and killed" Nicoh. ECF No. 1 at 5. Both claims are procedurally defaulted because Winston failed to raise either on direct appeal. ECF No. 4-1 at 34. Instead, he first presented the claims in his untimely application for leave to appeal to the Court of Appeals. ECF No. 4-1 at 153, 155. From this, Winston argues that the Court of Appeals' erroneous decision to dismiss the appeal as untimely excuses the default on the underlying claims here. ECF No. 9 at 3. This contention is unavailing. Winston cites no authority that a state court's adherence to a procedural rule which disadvantages the petitioner can excuse default. Nor has Winston made any showing of actual innocence or that failure to reach the claim would cause a fundamental miscarriage of justice.[5]

Indeed, Winston does not seriously contest that his claim is procedurally defaulted. Rather, he simply urges the Court to review the claim because the Court of Appeals erred in finding his application untimely. ECF No. 9 at 4. This alone is insufficient. Winston has not otherwise demonstrated actual innocence or that failing to reach the claim would result in a fundamental

---

[5] Alternatively, the challenge to geolocation data fails on the merits. The reliability of evidence introduced at trial is an issue of state law, not one which implicates a federal statute or the Constitution. *Dowling v. United States*, 493 U.S. 342, 352 (1990) (holding that even when an evidentiary ruling is erroneous under state law, "introduction of improper evidence against a defendant does not amount to a violation of due process") *overruled on other grounds by Perry v. New Hampshire*, 565 U.S. 228 (2012); *see also Fullwood v. Lee*, 290 F. 3d 663, 692 (4th Cir. 2002) (holding that normally the admissibility of evidence at state trial is a state law matter and does not involve federal constitutional issues). Moreover, to the extent Winston challenges the constitutionality law enforcement's collection of geo-location data, that challenge is not properly before this Court where, as here, he was given a full and fair opportunity to litigate the issue in his criminal proceedings. *See Stone v. Powell*, 428 U.S. 465 (1976); *Boggs v. Bair*, 892 F.2d 1193 (4th Cir. 1989), *cert. denied*, 495 U.S. 940 (1990); *Doleman v. Muncy*, 579 F.2d 1258 (4th Cir. 1978); ECF No. 4-1 at 4-5.

miscarriage of justice. Nor does the record reveal any cause and prejudice which would excuse the procedural default. Thus, the claim must be dismissed as defaulted.

### IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted).

Winston has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Winston may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied entirely. A separate Order follows.

| | |
|---|---|
| 5/17/22 | /S/ |
| Date | Paula Xinis<br>United States District Judge |